CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
August 27, 2026
LAURA A. AUSTIN, CLERK
BY: /s/ M. Poff
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **ABDULLAH BADIE,** | ) | |
| **Plaintiff,** | ) | **Case No. 7:25-cv-00339** |
| | ) | |
| **v.** | ) | |
| | ) | **By: Michael F. Urbanski** |
| **S. FRANKLIN, et al.,** | ) | **Senior United States District Judge** |
| **Defendants.** | ) | |

**MEMORANDUM OPINION**

Abdullah Badie, a state inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983. The case is presently before the court on a partial motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) filed by ten defendants employed by the Virginia Department of Corrections (VDOC) (collectively, the "VDOC defendants"): Cpt. S. Franklin, Lt. Phipps, Lt. Meade, Almarode, M. Owens, Unit Manager Collins, Lt. Fleming, Sgt. Grubb, Sgt. Mullins, and Sgt. Bently. ECF No. 48. Badie has not responded to the motion, and the time for doing so has expired. For the reasons set forth below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. Background

Badie is incarcerated at Red Onion State Prison (Red Onion). The events giving rise to this action occurred at Red Onion in 2023. For the sake of brevity, the court will not recite all of Badie's factual allegations here. Instead, the court will summarize the allegations relevant to the pending partial motion to dismiss.

On July 22, 2023, Badie began having a panic attack after correctional officers had been "constantly provoking him," including by kicking on his cell door. Compl., ECF No. 1, at 6.

Badie covered his cell window with paperwork in an effort to get the attention of a supervisor. Id. at 7. Once Lt. Phipps arrived, Badie removed the paperwork from his window. Id. Nonetheless, Phipps and Sgt. Grubb threatened to use force against him "so they could put him on strip cell." Id. Phipps then ordered Grubb to spray Badie with OC spray.* Id.

Later that afternoon, Badie covered his window again after being denied a dinner tray. Id. at 8. An extraction team subsequently arrived, and Badie became agitated when they also refused to feed him. Id. Lt. Phipps, Cpt. Franklin, Lt. Meade and other officers threatened to use force against him so that he would "come out and let them put him on strip cell for no reason but to punish him." Id. Officers then deployed OC spray "4–5 more times" and Badie "could barely breathe." Id. After he was restrained on the floor with his arms cuffed behind his back, John Doe officers "jumped on [his] back/shoulders and began striking him viciously in his face multiple times." Id. They also squeezed and twisted his genitals, stepped on his side, and twisted his handcuffs. Id. at 9.

Badie was housed in the medical department from July 22, 2023, until July 28, 2023. Id. at 10. During that time, he went "on and off suicide watch" because he "only felt safe in medical." Id. After being told that he was "abusing being on 'safety status,'" Badie was placed on a "modified strip cell [status] known as SMHP (Self-Management Housing Plan)." Id. at 10–11. He remained on SMHP status from July 28, 2023, until September 5, 2023. Id. at 11. While on SMHP status, Badie was supposed to receive "finger food trays" since he was not allowed to use utensils. Id. However, Almarode and M. Owens, both of whom worked in the

* "'OC' is an abbreviation for 'oleoresin capsicum.' OC spray is also known as pepper spray or mace." United States v. Rodriguez, 392 F.3d 539, 542 n.1 (2d Cir. 2004).

food service department, sent Badie regular meal trays instead, and he had to eat with his hands or folded paper. Id.

Based on these and other allegations, Badie filed this action under 42 U.S.C. § 1983. He asserts, among other claims, that Franklin, Phipps, and Meade failed to protect him from cruel and unusual punishment in violation of the Eighth Amendment (Claim 1); that Almarode and Owens inflicted cruel and unusual punishment in violation of the Eighth Amendment (Claim 9); and that Almarode and Owens were grossly negligent and intentionally inflicted emotional distress in violation of Virginia law (Claim 10). Id. at 13–14. In his prayer for relief, Badie seeks injunctive relief and monetary damages. Id. at 15–17.

The VDOC defendants have filed a partial motion to dismiss under Rule 12(b)(6) in which they seek dismissal of Claims 1, 9, and 10. They have also moved to dismiss Badie's requests for injunctive relief. See VDOC Defs.' Mem. Supp. Mot. Dismiss, ECF No. 49, at 2.

## II. Standard of Review

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive dismissal for failure to state a claim, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

When evaluating whether a complaint states a claim upon which relief can be granted, "the court must construe all factual allegations in the light most favorable to the plaintiff."

Wilcox v. Brown, 877 F.3d 161, 166–67 (4th Cir. 2017). "Additionally, when a plaintiff raises a civil rights issue and files a complaint pro se, the court must construe pleading requirements liberally." Id. "But liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." Bing v. Brivo Sys., LLC, 959 F.3d 605, 618 (4th Cir. 2020). A complaint filed by a pro se plaintiff "still must contain enough facts to state a claim for relief that is plausible on its face." Thomas v. Salvation Army S. Terr., 841 F.3d 632, 637 (4th Cir. 2016) (internal quotation marks omitted).

## III. Discussion

### A. Claim 1

In Claim 1, Badie asserts that Franklin, Phipps, and Meade failed to protect him from cruel and unusual punishment in violation of the Eighth Amendment. This claim appears to stem from the uses of force that occurred on July 22, 2023. Badie alleges that these three defendants had "direct control" over subordinate officers on that date; that Phipps ordered Grubbs to spray him with OC spray despite having uncovered his cell window; and that Franklin, Phipps, and Meade threatened to use force against him later that day, after he complained about not being fed, and were present when officers "sprayed [him] with gas 4–5 more times" and physically assaulted him. Compl. at 4–5, 7–8.

The defendants have moved to dismiss Claim 1 on the basis that the complaint "fails to establish the elements of supervisory liability." Defs.' Mem. Supp. Mot. Dismiss at 4 (citing the three-part test for supervisory liability outlined in Shaw v. Stroud, 13 F.3d 791 (4th Cir. 1994)). However, supervisory liability is merely one form of liability under § 1983. See King v. Rubenstein, 825 F.3d 206, 223 (4th Cir. 2016) ("A state official can be in a § 1983 suit in three

ways: in his personal capacity, his official capacity, or in a more limited way, his supervisory capacity."). "For personal liability, 'it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right.'" Id. (quoting Kentucky v. Graham, 473 U.S. 159, 166 (1985)). And the requisite personal involvement "need not be hands-on." Riddick v. Barber, 109 F.4th 639, 649 (4th Cir. 2024). "Instead, the requisite causal connection between defendant and violation can be established if the defendant sets in motion a series of acts or omissions by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." Id. at 649–50 (internal quotation marks and brackets omitted). A defendant may also be held personally liable under § 1983 on a theory of bystander liability, "if he: (1) knows that a fellow officer is violating an individual's constitutional rights; has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Randall v. Prince George's Cnty., 302 F.3d 188, 204 (4th Cir. 2022).

Here, the complaint includes allegations from which the court could reasonably infer that Franklin, Phipps, and Meade were personally involved in the use of excessive force on July 22, 2023, either as a direct participant or as a bystander. See, e.g., McGrier v. City of New York, 849 F. App'x 268, 272 (2d Cir. 2021) ("To be found liable for excessive force, [an officer] must have either used excessive force or failed to intervene, despite having a realistic opportunity to do so, to prevent another officer from applying excessive force.") (internal quotation marks omitted); see also Riddick, 109 F.4th at 650 (concluding that a plaintiff pleaded facts plausibly connecting a defendant to the challenged conditions of confinement where the plaintiff alleged that he was placed in restraints at "the directive" of the defendant) (internal quotation marks omitted). While Franklin, Phipps, and Meade may be able to

establish on summary judgment that the use of OC spray or other forms of force was not excessive under the circumstances or that they did not have a reasonable opportunity to intervene in the use of force by other officers, Badie's allegations are sufficient to proceed against these defendants at this stage of the proceedings. Accordingly, the partial motion to dismiss will be denied with respect to Claim 1.

**B. Claims 9 and 10**

Claims 9 and 10 are asserted against defendants Almarode and M. Owens. According to the complaint, Almarode and Owens "were both active employees of the food service department at Red Onion." Compl. at 6. Badie alleges that they sent him regular trays without utensils while he was on SMHP status and that he had to eat with his hands or folded paper. Id. Badie claims that Almarode and Owens violated the Eighth Amendment (Claim 9) and that they were grossly negligent and intentionally inflicted emotional distress in violation of Virginia law (Claim 10).

**1. Eighth Amendment**

It is "well established that 'the conditions under which [an inmate] is confined are subject to scrutiny under the Eighth Amendment,'" which protects inmates from cruel and unusual punishment. Cartagena v. Lovell, 103 F.4th 171, 181 (4th Cir. 2024) (quoting Helling v. McKinney, 509 U.S. 25, 31 (1993)). "But such scrutiny 'does not mandate comfortable prisons,' instead permitting conditions that are 'restrictive and even harsh.'" Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 349, 347 (1981)).

"Like any other Eighth Amendment claim, an Eighth Amendment conditions of confinement claim has (1) objective and (2) subjective components." Porter v. Clarke, 923

F.3d 348, 355 (4th Cir. 2019) (internal quotation marks omitted). To satisfy the objective component, an inmate must "demonstrate that the deprivation alleged [was] objectively sufficiently serious." Id. (internal quotation marks omitted). "To be sufficiently serious, the deprivation must be extreme—meaning that it poses a serious or significant physical or emotional injury resulting from the challenged conditions, or a substantial risk of harm resulting from . . . exposure to the challenged conditions." Id. (internal quotation marks omitted). To satisfy the subjective component, "a prisoner must show that prison officials . . . had a 'sufficiently culpable state of mind,'" and, in this context, "that state of mind must be at least 'deliberate indifference' to the inmate's 'health or safety.'" Cartagena, 103 F.4th at 181 (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). "A plaintiff establishes 'deliberate indifference' by showing that the prison official knew of and disregarded an excessive risk to inmate health or safety." Danser v. Stansberry, 772 F.3d 340, 347 (4th Cir. 2014) (internal quotation marks and brackets omitted). This is a "very high standard," which is not met by a showing of mere negligence. Ford v. Hooks, 108 F.4th 224, 230 (4th Cir. 2024) (internal quotation marks omitted).

Badie's complaint does not contain sufficient factual matter, accepted as true, to state a plausible Eighth Amendment claim against Almarode and Owens. As other courts have recognized, a lack of eating utensils generally does not constitute the type of extreme deprivation that would support an Eighth Amendment claim. See, e.g., Stanley v. Page, 44 F. App'x 13, 15 (7th Cir. 2002) ("[E]ating unappetizing food with one's hands . . . do[es] not jeopardize health or safety."); Stampone v. Parnall Corr. Facility, No. 4:24-cv-11812, 2024 WL 4595122, at *5 (E.D. Mich. Oct. 28, 2024) ("[T]he lack of a cup to drink from or utensils to

eat with . . . does not rise to the level of a constitutional violation.") (collecting cases); Collins v. Fischer, No. 7:15-cv-00103, 2018 WL 1626528, at *8 (S.D.N.Y. Mar. 30, 2018) ("[N]umerous courts have found that failure to provide eating utensils does not suffice to state an Eighth Amendment claim.") (collecting cases). Additionally, Badie has not alleged facts from which the court could reasonably infer that either food service worker consciously disregarded an excessive risk to his health or safety. Thus, the partial motion to dismiss will be granted with respect to Claim 9.

**2. Gross Negligence**

Badie's allegations are also insufficient to state a claim for gross negligence against Almarode and Owens. "[T]he standard for gross negligence in Virginia is very high." Doe v. Russell Cnty. Sch. Bd., 292 F. Supp. 3d 690, 716 (W.D. Va. 2018). "Gross negligence is 'a degree of negligence showing indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such other person.'" Elliott v. Carter, 292 Va. 618, 622, 791 S.E.2d 730, 732 (Va. 2016) (quoting Cowan v. Hospice Support Care, Inc., 268 Va. 482, 487, 603 S.E.2d 916, 918 (Va. 2004)). It "requires a degree of negligence that would shock fair-minded persons, although demonstrating something less than willful negligence." Id.

Badie's allegations against Almarode and Owens do not meet this demanding standard. While being served meals without utensils may have been frustrating and inconvenient, Badie's allegations fall short of describing the type of egregious conduct that would "shock fair-minded persons" and amount to a "complete neglect" of his safety. Elliott, 292 Va. at 622, 791 S.E.2d at 732 (internal quotation marks omitted); see also Wilkins v. Montgomery, 751

F.3d 214, 229 (4th Cir. 2014) (providing examples of the types of "far more egregious" Virginia cases in which gross negligence claims were allowed to proceed to trial, including a case in which a "260-pound football coach aggressively tackled a 13-year-old, 144-pound, inexperienced football player, breaking his left arm," and a case in which a "driver of an automobile deliberately increased speed on a straight portion of a narrow road, which had an upcoming curve that [the] driver knew about, and the car skidded 46 feet and collided head-on with a tree, severely injuring the passengers") (internal quotation marks omitted) (citing Koffman v. Garnett, 265 Va. 12, 574 S.E.2d 258 (Va. 2003); Nichols v. Brizendine, 210 Va. 158, 169 S.E.2d 457 (Va. 1969)). Thus, the partial motion to dismiss will be granted as to the claim of gross negligence asserted in Claim 10.

### 3. Intentional Infliction of Emotional Distress

For similar reasons, the court concludes that Badie has failed to state a claim of intentional infliction of emotional distress against Almarode and Owens. To state a claim for intentional infliction of emotional distress, a plaintiff must allege facts sufficient to show: (1) that "the wrongdoer's conduct was intentional or reckless"; (2) that "the conduct was outrageous or intolerable"; (3) that "there was a causal connection between the wrongdoer's conduct and the resulting emotional distress"; and (4) that "the resulting emotional distress was severe." Supervalu, Inc. v. Johnson, 276 Va. 356, 370, 666 S.E.2d 335, 343 (Va. 2008). With regard to the second element, mere tortious or even criminal conduct is insufficient. Russo v. White, 241 Va. 23, 27, 400 S.E.2d 160, 162 (Va. 1991). Instead, the conduct must have been "so outrageous in character, and so extreme in degree, as to go beyond all possible

bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id.

Badie's allegations of being served meals without eating utensils do not meet this stringent standard. See, e.g., Morales v. Bierly, 1:24-cv-01081, 2025 WL 3205369, at *4 (M.D. Pa. Nov. 17, 2025) (concluding that the occasional denial of meals did "not meet the standard of 'extreme and outrageous' conduct"); Ogunde v. Prison Health Servs., 274 Va. 55, 66, 645 S.E.2d 520, 526-27 (Va. 2007) (concluding that an inmate's claim of intentional infliction of emotional distress was properly dismissed since the alleged failure to provide appropriate medical treatment for the inmate's skin condition was not "so intolerable or outrageous such that it offend[ed] against the generally accepted standards of decency and morality"). Consequently, the partial motion to dismiss will be granted with respect to the claim of intentional infliction of emotional distress asserted as part of Claim 10.

**C. Injunctive Relief**

The VDOC defendants have also moved to dismiss any request for injunctive relief included in the prayer for relief. As this court has previously held, however, Rule 12(b)(6) "may be used only to dismiss a 'claim' in its entirety" and is not the proper vehicle to merely challenge a demand for relief. Charles v. Front Royal Volunteer Fire & Rescue Dep't, Inc., 21 F. Supp. 3d 620, 629 (W.D. Va. 2014) (internal quotation marks omitted). Accordingly, even assuming that Badie cannot establish all of the elements necessary for a permanent injunction, "there is no basis for the court to address the nature of the appropriate relief at this stage of the proceedings." Id.; see also Kaufmann v. Foley, No. 7:21-cv-00511, 2022 WL 1056089, at *2 (W.D. Va. Apr. 8, 2022) ("Because a motion under Rule 12(b)(6) is not the proper vehicle

to challenge a prayer for relief, the court will deny the motion to dismiss. Although federal courts lack authority to terminate state employees from their job duties and the court cannot provide the relief that Kaufmann explicitly seeks, 'a demand for relief is not part of a plaintiff's statement of the claim.'") (quoting Alexander v. Southeast Wholesale Corp., 978 F. Supp. 2d 615, 624 n.7 (E.D. Va. 2013)).

## IV. Conclusion

For the reasons stated, the partial motion to dismiss filed by the VDOC defendants, ECF No. 48, is **GRANTED IN PART** and **DENIED IN PART**. An appropriate order will be entered

Entered: August 27, 2026

Michael F.
Urbanski
U.S. District Judge
2026.08.27
13:56:18 -04'00'

Michael F. Urbanski
Senior United States District Judge