CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
August 27, 2026
LAURA A. AUSTIN, CLERK
BY: /s/ M. Poff
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| **ABDULLAH BADIE,** | ) | |
| **Plaintiff,** | ) | **Case No. 7:25-cv-00339** |
| | ) | |
| **v.** | ) | |
| | ) | **By: Michael F. Urbanski** |
| **S. FRANKLIN, et al.,** | ) | **Senior United States District Judge** |
| **Defendants.** | ) | |

**MEMORANDUM OPINION**

Abdullah Badie,[1] a state inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983 against multiple individuals employed at Red Onion State Prison (Red Onion). Defendants L. Holbrook and RN Mullins have moved for summary judgment on the ground that Badie failed to properly exhaust his claims against them as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). Badie has not responded to the motion, and the time for doing so has expired. For the reasons set forth below, the motion for summary judgment filed by Holbrook and Mullins is **GRANTED**.[2]

## I. Background

### A. Summary of Badie's Claims Against Holbrook and Mullins

Badie alleges that correctional officers at Red Onion used excessive force against him on July 22, 2023, after which they transported him in a wheelchair to see Nurse Mullins. Compl., ECF No. 1, at 6–9. Badie alleges that Nurse Mullins did not assess or evaluate him, despite being told about his injuries. Id. at 9.

---

[1] Badie is also known as Brandon Crosby.

[2] A motion for summary judgment filed by other defendants will be addressed separately.

Badie was confined in the medical unit from July 22, 2023, until July 28, 2023. Id. He alleges that Nurse Mullins and Nurse Holbrook refused to examine his wounds. Id. He also alleges that they refused to provide him with ice or pain medication during that period. Id.

Badie claims that the nurses' actions and omissions violated the Eighth Amendment's prohibition of cruel and unusual punishment. Id. at 14. He also asserts claims of gross negligence and intentional infliction of emotional distress in violation of Virginia law. Id.

**B. Evidence Relevant to Exhaustion**

**1. The Applicable Inmate Grievance Procedure**

The Virginia Department of Corrections (VDOC) has established a grievance procedure for inmates that is set forth in VDOC Operating Procedure (OP) 866.1. Still Decl., ECF No. 44-1, ¶ 4. Grievable issues include actions of staff that affect an inmate personally. OP 866.1 § III(B)(1) (eff. Jan. 1, 2021, amended Apr. 1, 2023), Still Aff. Ex. A, ECF No. 44-2.

The first step in the grievance procedure is the informal complaint process, which begins with a verbal complaint. If a verbal complaint is not resolved to the inmate's satisfaction, the inmate may submit an informal written complaint. Id. § I(D)(2). The written complaint "must be received by the Institutional Ombudsman or designated staff within 15 days of the original incident or discovery of the incident." Id. § II(B)(1)(d). Within two working days of receiving a written complaint, staff must log the complaint, print a grievance receipt, and provide the inmate with the receipt as notification of acceptance. Id. § II(B)(2). Following the logged receipt of a written complaint, staff have 15 days to provide an appropriate

response. Id. §§ I(D)(3), II(B)(4). If a staff member fails to provide a timely response or if the inmate is dissatisfied with the response, the inmate may file a regular grievance. Id. § I(D)(4).

Regular grievances must be submitted within 30 days from the date of the incident or the discovery of the incident, absent injury, sickness, or some other circumstance beyond an inmate's control. Id. § III(B)(5). If a circumstance beyond the inmate's control prevents him from meeting the 30-day deadline, the inmate "has five days to file their grievance once the reason for delay is no longer valid." Id.

Following the submission of a regular grievance, the institutional ombudsman has two days to accept or reject it. OP 866.1 § I(D)(5). A timely regular grievance may be accepted even if the related written complaint was not filed within the applicable 15-day period. See id. § III(C)(3) ("*Regular Grievances* which include *Written Complaints* filed after the 15 days should be accepted for intake as long as the *Regular Grievance* is submitted within 30 days of the event or discovery."). If a regular grievance satisfies the intake criteria, staff must accept the grievance, log it into VACORIS, and issue a grievance receipt within two working days. Id. § III(C)(4). If the grievance does not meet the intake criteria, staff have two working days to return the grievance to the inmate with an explanation for its rejection. Id. § III(C)(5). The grievance form lists several reasons for which a grievance can be rejected at intake, such as "Expired Filing Period." Still Decl. Ex. B, ECF No. 44-3 at 2. If an inmate disagrees with an intake decision, the inmate may appeal the decision to the regional ombudsman within five days. OP 866.1 § III(C)(6).

When a regular grievance is accepted during the intake process, the warden or assistant warden is responsible for providing a Level I response within 30 days of the issuance of the

grievance receipt. Id. § III(F)(1)–(2). If an inmate is dissatisfied with the response, the inmate may submit a grievance appeal to Level II within five days of receiving the Level I response. Id. § IV(B)(1)–(2). An inmate may also file an appeal if any time limit expires after a grievance has been submitted. Id. § (IV)(B)(3).

OPP 866.1 explains that an inmate must exhaust all of the requirements of the grievance procedure before seeking judicial relief. Id. § V(A). The exhaustion requirement is met when a regular grievance "has been accepted into the grievance process and appealed, without satisfactory resolution of the issue." Id. § V(B).

**2. Badie's Exhaustion Efforts**

In support of the pending motion for summary judgment, Holbrook and Mullins submitted a declaration executed by T. Still, the grievance coordinator at Red Onion, along with relevant grievance records. On August 10, 2023, Badie signed a written complaint alleging that he had been denied medical treatment from July 22, 2023, to July 28, 2023, after being physically assaulted by correctional officers. Still Decl. Ex. B, ECF No. 44-3 at 9. Badie further alleged that he had been subject to mental health precautions from July 22, 2023, until 6:15 p.m. on August 6, 2023, and that he had "no pen" during that period. Id. The written complaint was received by the grievance department on August 14, 2023; logged as ROSP-23-INF-03188; and assigned to the medical department for a response. Id. The written complaint was stamped "received" by the medical department on August 15, 2023. Id. In a response dated August 30, 2023, a staff member noted that Crosby had been seen by a physician. Id.

On August 31, 2023, Badie signed a regular grievance alleging that he had been denied medical treatment on July 22, 2023, after being "beaten by staff." Id. at 1. Badie attached the

receipt that he had received for ROSP-23-INF-03188 and asserted that he had not yet received a response to the written complaint. Id. at 1, 3; Still Decl. ¶ 17. The institutional ombudsman rejected the regular grievance as untimely. Still Decl. Ex. B, ECF No. 44-3 at 2. The ombudsman checked the box for "Expired Filing Period," which included the following explanation:

> You must submit your grievance within 30 [days] of the original incident or discovery of the incident unless the reason for delay was beyond your control, you have not been provided formal orientation, or a more restrictive time limit has been established to prevent loss of remedy or the issue becoming moot.

Id. The ombudsman also added a handwritten notation emphasizing that "[t]his incident happened over 30 days ago" and that Badie had submitted other complaints that had been logged and answered.[3] Id.

Badie filed an offender request form appealing the intake decision. Id. at 5. Badie asserted that the decision lacked "any substance" and that he did not have access to a pen until August 6, 2023. Id. The regional ombudsman subsequently upheld the intake decision. Id. at 2.

On September 1, 2023, Badie signed another regular grievance alleging that he had been denied medical treatment from July 22, 2023, to July 28, 2023. Id. at 7. Along with that grievance, Badie submitted his related written complaint with the medical department's August 30, 2023, response. On September 5, 2023, the institutional ombudsman rejected the grievance

---

[3] Both sides submitted a copy of a written complaint that Badie signed on August 2, 2023, in which he complained about being denied out-of-cell recreation time. The grievance department received the complaint on August 3, 2023, and a counselor responded to the complaint on August 11, 2023. See Compl. Ex. 14, ECF No. 1-1 at 52; Still Decl. Ex. B, ECF No. 44-3 at 11.

as untimely because it was filed more than 30 days after the date of the underlying incident. Id. at 8.

On September 7, 2023, Badie submitted a facility request form appealing the intake decision. Still Decl. ¶ 8; Compl. Ex. 10, ECF No. 1-1 at 38. Badie again asserted that he was not allowed to use a pen until August 6, 2023. Id. He also asserted that he had been waiting for staff to respond to his written complaint. Id. On September 25, 2023, the regional ombudsman upheld the decision to reject the grievance as untimely. Id. at 36.

## II. Standard of Review

Defendants Hickman and Williams have moved for summary judgment on the basis that Badie failed to properly exhaust his administrative remedies prior to filing suit. Under Rule 56 of the Federal Rules of Civil Procedure, the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). To survive summary judgment, there must be sufficient evidence from which a reasonable finder of fact could return a verdict in the nonmoving party's favor. Id. at 252. "Conclusory or speculative allegations do not suffice to oppose a properly supported motion for summary judgment, nor does a mere scintilla of evidence." Matherly v. Andrews, 859 F.3d 264, 280 (4th Cir. 2017) (internal quotation marks omitted).

## III. Discussion

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007). The exhaustion requirement "serves two main purposes." Woodford v. Ngo, 548 U.S. 81, 89 (2006). First, it "protects administrative authority" by giving "an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court" and by discouraging "disregard of the agency's procedures." Id. (internal quotation marks omitted). Second, it "promotes efficiency" since claims "generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." Id.

Over the past 20 years, the Supreme Court has "strictly interpreted" the PLRA's exhaustion requirement. Williams v. Carvajal, 63 F.4th 279, 285 (4th Cir. 2023). The Court has held that the provision "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes." Porter v. Nussle, 534 U.S. 516, 532 (2002). The Court has also held that "proper exhaustion" is required, which means that "a prisoner must complete the administrative review process in accordance with applicable procedural rules, including deadlines, as a precondition for bringing suit in federal court." Woodford, 548 U.S. at 88, 90. The applicable procedural rules "are defined not by the PLRA, but by the grievance process itself." Jones, 549 U.S. at 218. If "an administrative process is susceptible of multiple

reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion." Ross v. Blake, 578 U.S. 632, 644 (2016).

The only exception to the PLRA's exhaustion requirement is "the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" Id. at 648. "Available" means "capable of use for the accomplishment of a purpose, and that which is accessible or may be obtained." Id. at 642 (internal quotation marks omitted). If an administrative remedy is not capable of use to obtain relief, "an inmate's duty to exhaust 'available' remedies does not come into play." Id. at 643. The Supreme Court has identified three circumstances in which an administrative grievance procedure is not "capable of use" in this sense: (1) where the procedure "operates as a simple dead end," with correctional officials "unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the procedure is "so opaque" that it is "practically . . . incapable of use" because "no ordinary prisoner can discern or navigate it"; and (3) where correctional officials "thwart inmates from taking advantage of a grievance procedure through machination, misrepresentation, or intimidation." Id. at 643–44; see also Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008) ("[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it.").

Because exhaustion is an affirmative defense under the PLRA, defendants bear the burden of establishing that an inmate failed to exhaust his administrative remedies. Jones, 549 U.S. at 216. Once defendants establish that a plaintiff failed to exhaust, "the onus falls on the plaintiff to show that remedies were unavailable to him." Tuckel v. Grover, 660 F.3d 1249, 1254 (10th Cir. 2011); see also Graham v. Gentry, 413 F. App'x 660, 663–64 (4th Cir. 2011)

(concluding that summary judgment was appropriate where an inmate failed to fully comply with a jail's grievance procedure and failed to "adduce facts showing that he was prevented, through no fault of his own, from availing himself of that procedure").

**A. Proper Exhaustion**

The court will first address whether Holbrook and Mullins have met their burden of establishing that Badie failed to exhaust his administrative remedies. As previously explained, the Supreme Court has interpreted the PLRA to require "proper exhaustion" in accordance with "an agency's deadlines and other critical procedural rules," Woodford, 548 U.S. at 90. Consequently, "an untimely or otherwise procedurally defective administrative grievance" does not satisfy the exhaustion requirement. Id. at 83–84.

Having reviewed the record, the court concludes that no genuine issue of material fact exists as to whether Badie properly exhausted his administrative remedies. While Badie submitted two regular grievances alleging that he had not received medical treatment after being physically assaulted by correctional officers, the grievances were rejected at intake on the basis that the filing period had expired. As previously noted, an inmate in the custody of the VDOC typically has "30 days from the original incident or discovery of the incident" to file a regular grievance. OP 866.1 § III(B)(5). Since Badie's regular grievances listed incident dates of July 22–28, 2023, but were not signed until August 31, 2023, and September 1, 2023, the grievances were filed past the 30-day deadline of August 27, 2023.[4] Although an exception to the 30-day deadline applies when a delayed filing is beyond the inmate's control, Badie has

[4] August 27, 2023, is the date that fell 30 days after the last date on which Badie alleges that he was denied medical treatment.

not identified any circumstance beyond his control that prevented him from complying with the 30-day deadline. Even assuming that Badie did not have access to a pen until August 6, 2023, he still had 21 days to file a timely regular grievance. See, e.g., Simmons v. Earhart, No. 7:22-cv-00440, 2025 WL 876505, at *4 (W.D. Va. Mar. 20, 2025) (concluding that an inmate's grievance was untimely and that even "assuming [he] was justifiably delayed in being able to begin utilizing the grievance process until approximately February 16, 2021, that was still well before the deadline on March 5, 2021"). Although he signed a written complaint on August 10, 2023, which was not received by the grievance department until August 14, 2023, the submission of a written complaint—even if untimely—does not toll the deadline for filing a regular grievance. See VDOC OP 866.1 § III(C)(3) ("*Regular Grievances* which include *Written Complaints* filed after the 15 days should be accepted for intake as long as the *Regular Grievance* is submitted within 30 days of the event or discovery.") (emphasis added). Additionally, "it is well settled that merely appealing an intake decision 'does not constitute valid exhaustion of remedies under OP 866.1.'" Bullock v. Hamby, No. 7:23-cv-00337, 2025 WL 2233680, at *5 (W.D. Va. Aug. 5, 2025), aff'd, No. 25-6708, 2026 WL 595469 (4th Cir. Mar. 3, 2026) (quoting Hailey v. Clary, No. 7:17-cv-00260, 2018 WL 2123623, at *2 (W.D. Va. May 8, 2018)). Instead, the exhaustion requirement is satisfied only when a regular grievance "has been accepted into the grievance process and appealed, without satisfactory resolution of the issue." OP 866.1 § V(B) (emphasis added).

For these reasons, the court concludes that no genuine issue of material fact exists as to whether Badie properly exhausted his administrative remedies and that the defendants have met their burden of proving that he failed to do so.

**B. Availability of Administrative Remedies**

The court also concludes that Badie has failed to offer evidence demonstrating that he was prevented from properly exhausting his administrative remedies through no fault of his own. As explained above, "a grievance process is rendered 'unavailable' under the PLRA only if an inmate is actually prevented from using it." Moss v. Harwood, 19 F.4th 614, 623 (4th Cir. 2021). If "an inmate is able to participate in a grievance process, notwithstanding alleged obstacles, then that process remains 'available' for purposes of the PLRA." Id.

Here, Badie has not identified any obstacle that prevented him from filing a timely regular grievance. Even assuming that Badie did not have access to a pen until August 6, 2023, he still had time to file a written complaint and a regular grievance before the 30-day deadline set forth in OP 866.1 expired. Because there is no evidence that anyone prevented Badie from doing so, the statutory exception to the exhaustion requirement does not apply.

In sum, there is no evidence from which a reasonable factfinder could conclude that Badie properly exhausted his administrative remedies or that the grievance process set forth in OP 866.1 was "not capable of use" by Badie through no fault of his own. Ross, 578 U.S. at 642. Accordingly, defendants Holbrook and Mullins are entitled to summary judgment on the exhaustion defense.

Entered: August 27, 2026

Michael F. Urbanski
U.S. District Judge
2026.08.27
15:20:22 -04'00'

Michael F. Urbanski
Senior United States District Judge